CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 3 1 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

KATHERINE DEAL, et al., )
)
Plaintiffs, )          Civil Action No. 7:08CV00575
)
v. )          **MEMORANDUM OPINION**
)
DANIEL GRUBB, et al., )          By: Hon. Glen E. Conrad
)          Chief United States District Judge
Defendants. )

In this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), Katherine

Deal, Linda Muller, and Debra Keener, employees of Volvo Trucks North America, Inc.

("Volvo"), claim that they were denied promotion to the position of product quality auditor on

the basis of their gender. The case is presently before the court on Volvo's motion for summary

judgment. For the reasons that follow, the motion will be granted.

### Factual Background

The following facts are presented in the light most favorable to the plaintiffs. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that all evidence must be

construed in the light most favorable to the party opposing summary judgment).

At all times relevant to the complaint, and continuing until the present, the plaintiffs have

worked at Volvo's New River Valley plant in Dublin, Virginia, where the company manufactures

heavy-duty commercial trucks. Deal is currently employed as a training facilitator, Muller is

currently employed as an administrative assistant, and Keener is currently employed as an

administrative coordinator.

The majority of the employees at the New River Valley plant are represented by the United Auto Workers Local 2069 ("UAW" or "union"). The UAW represents two bargaining units at the plant: the hourly bargaining unit, which is mostly comprised of the employees who assemble the trucks; and the salaried bargaining unit, which primarily includes the designers, engineers, auditors, administrative assistants, and other employees who assist with the administrative functions associated with assembling the trucks. The plaintiffs are employed in the salaried bargaining unit.

Volvo's collective bargaining agreement with the UAW outlines the procedure for filling job vacancies within the salaried bargaining unit. Pursuant to the agreement, Volvo first posts job descriptions for vacant positions for all plant employees to view. The job description lists the minimum education and experience requirements for the position. All Volvo employees, whether union or non-union, are permitted to apply for vacant positions. Pursuant to the collective bargaining agreement, applicants from the salaried bargaining unit are given priority in hiring for vacant positions within that unit. After the posting expires, Volvo determines whether any applicants from the salaried bargaining unit meet the minimum education and experience requirements for the vacant position. Upon that review, all applicants are designated as either "qualified" or "not qualified" for the position. Once a list of qualified candidates is compiled, the vacant position is filled solely on the basis of the seniority of the qualified candidates. If no applicants from the salaried bargaining unit are found to be qualified, the collective bargaining agreement authorizes Volvo to hire applicants from outside the salaried bargaining unit, or to hire unqualified candidates from within the salaried bargaining unit.

In this case, all three plaintiffs sought to be promoted to the position of product quality auditor, which falls within the salaried bargaining unit. Product quality auditors are responsible for conducting random, "head-to-toe" audits of the trucks as they roll off the assembly line at the Volvo plant. (Daniel Grubb Decl. at para. 3). Therefore, the auditors must have comprehensive technical knowledge of the structure and functionality of each component contained in the trucks. They are responsible for checking every detail of the trucks to ensure, among other things, that the trucks' parts are installed in accordance with Volvo specifications and that each part is functioning properly. The auditors must also road test the trucks by driving them at least 30 miles. Following the performance of the audit, the product quality auditors summarize their findings in a report and assign a point value to any discovered defects. The auditors then meet with Volvo's production team to discuss their findings. The findings of the product quality auditors can result in changes to the assembly process or the trucks' design.

On August 18, 2006, Volvo posted announcements for two vacant product quality auditor positions. At that time, the written job description for the position listed the following minimum education and experience requirements: (1) "Minimum of 5 years experience in design or assembly working with [Volvo's] product"; (2) "[C]omprehensive and detailed knowledge of entire product line and [ability] to discern defective build"; and (3) "Extensive knowledge of quality requirements and additional quality requirements." (Attach. 2 to Decl. of David Lilly).

Thirteen employees, including the plaintiffs, applied for the vacant positions, nine of whom were from the salaried bargaining unit. David Lilly, a labor relations representative for Volvo, was responsible for awarding the positions. Upon reviewing the applications, Lilly

3

determined that none of the applicants, male or female, satisfied the minimum qualifications. Consequently, none of the applicants were selected for the vacant positions.

In early September of 2006, Nicky Twine, the UAW bargaining chairman, approached Volvo about the job description for the product quality auditor position, and requested that the description be revised. Twine indicated that the union was of the opinion that the minimum requirements for the auditor position were too restrictive.

Although the Union was not satisfied with the revisions, Volvo ultimately modified the job description to include the following changes to the minimum education and experience requirements: (1) Volvo added the requirement of "High School graduate, Associates and/or Technical degree preferred"; (2) Volvo changed the requirement of "5 years work experience in design or assembly" to "5 years work experience"; and (3) Volvo changed the requirement of "comprehensive and detailed knowledge of entire product" to "detailed comprehensive technical product knowledge." (Attach. 9 to Decl. of David Lilly).

The most significant change was the elimination of the "design or assembly" experience requirement, since a large percentage of the employees within the salaried bargaining unit have no experience designing or assembling Volvo trucks. According to Volvo, the revisions were intended to "expand the potential applicant base." (Lilly Decl. at para. 15).

On September 27, 2006, Volvo posted vacancies for two product quality auditor positions using the revised job description. Twelve individuals, including all three plaintiffs, applied for the second posting. At the request of Daniel Grubb, who supervised the auditors, Volvo held fact-finding interviews with a number of the applicants, including the plaintiffs.

4

David Lilly was again responsible for filling the vacancies. In accordance with the collective bargaining agreement, Lilly gave priority to applicants from the salaried bargaining unit. Of those applicants, Lilly ultimately determined that Ed Davis and Richard Arnold were the only two qualified for the position. According to the record, Lilly concluded that the three plaintiffs, as well as four male applicants from the salaried bargaining unit, were not qualified for the position because they lacked the "detailed comprehensive technical product knowledge" required for the job. (Lilly Decl. at para. 24-26).

Ed Davis, who was selected for one of the vacancies, had held various designer positions at Volvo for nearly 14 years and, thus, had actually designed certain aspects of Volvo trucks. Additionally, for over four years prior to his selection, Davis had worked as a liaison engineer. In that capacity, Davis worked as a liaison between the engineering and production teams to address engineering issues affecting the manufacturing of the company's trucks.

The other selectee, Richard Arnold, had also worked for Volvo for several years. However, he was found to be qualified for the auditor position based on his prior experience outside the company. Before joining Volvo, Arnold performed mechanical tasks at two automobile dealerships. At one dealership, Arnold replaced clutches, drive shafts, brake rotors, radiators, and alternators. At the other, Arnold held the position of service advisor, in which he advised customers regarding automobile repairs. Arnold also had significant experience with automobiles outside of work. He had replaced engines, clutches, transmissions, and brakes since the age of 12. Additionally, Arnold owned a racing team for which he performed mechanical work. According to the record, Lilly determined that Arnold's experience enabled him to satisfy

the auditor position's technical knowledge requirement, since many components of commercial trucks are similar to those in standard automobiles. (Lilly Decl. at para. 22).

On October 31, 2006, Volvo posted a vacancy for an additional product quality auditor position. Nine individuals applied for the position, including one of the plaintiffs, Katherine Deal. In early November of 2006, Lilly reviewed the applications and offered the position to Armand Parah, who Lilly found to be the only qualified applicant from the salaried bargaining unit. Parah declined the position, however, because it offered a lower salary than he was earning at the time. After determining that there were no other qualified applicants from the salaried bargaining unit, Lilly awarded the product quality auditor position to Barry Dixson, an employee from outside the salaried bargaining unit.

Dixson was hired by Volvo in 1993 and had most recently worked as a senior industrial engineer. At the time of his application for the product quality auditor position, Dixson had five years of production experience, eight years of industrial engineering experience at Volvo, and ten years of industrial engineering experience outside Volvo. Although Dixson had a performance improvement plan in his personnel file, Lilly spoke with Dixson's supervisor and was told that Dixson had corrected his performance issues and was working at a satisfactory level.

Lilly again determined that plaintiff Deal was not qualified for the position "because she lacked 'detailed comprehensive technical product knowledge.'" (Lilly Decl. at para. 30). Keener and Muller did not apply for the posted vacancy because it would have required them to work second shift.

All three plaintiffs later filed complaints of discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that they had been turned down for the position of

6

product quality auditor solely because of their gender. The EEOC concluded that there was reasonable cause to believe that the plaintiff's allegations were true and that the plaintiffs had been subjected to gender discrimination. Upon receiving right-to-sue notices from the EEOC, the plaintiffs filed the instant action against Volvo and Daniel Grubb on November 5, 2008.

By opinion and order entered May 12, 2009, the court dismissed the plaintiffs' Title VII claims against Grubb pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] The case is now before the court on Volvo's motion for summary judgment. The court held a hearing on the motion on July 20, 2010. The motion is now ripe for review.

## Standard of Review

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, however, the burden shifts to the non-moving party to show

---

[1] See Lissau v. Southern Food Serv., Inc., 159 F.3d 177 (4th Cir. 1998) (holding that supervisors are not liable in their individual capacities under Title VII).

that such an issue does, in fact, exist. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The non-moving party must set forth more than a "mere . . . scintilla of evidence" to forestall summary judgment. Anderson, 477 U.S. at 252. "[U]nsupported speculation . . . is not sufficient to defeat a summary judgment motion." Ash v. United Parcel Service, Inc., 800 F.2d 409, 411-412 (4th Cir. 1986).

### Discussion

Title VII makes it unlawful for an employer to discriminate against individuals on the basis of gender. See 42 U.S.C. § 2000e-2(a)(1). Under well-settled case law, plaintiffs may defeat a motion for summary judgment and establish a successful Title VII claim through two alternative methods of proof. First, plaintiffs may establish through direct or circumstantial evidence that gender was a "motivating factor" in the employer's employment decision. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc). Alternatively, plaintiffs may proceed under the burden-shifting framework adopted by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

In this case, the parties have confined their arguments to the McDonnell Douglas framework. Within this framework, the plaintiffs bear the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. Hill, 354 F.3d at 285. If the plaintiffs satisfy their initial burden, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Id. "This burden, however, is a burden of production, not persuasion." Holland v. Wash. Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). Once the employer has articulated a legitimate, nondiscriminatory explanation for its decision, "the burden shifts back to [the plaintiffs] to prove by a preponderance of the evidence

that the employer's stated reasons 'were not its true reasons, but were a pretext for

discrimination.'" Id. (quoting Hill, 354 F.3d at 285). "Regardless of the type of evidence offered

by a plaintiff as support for her discrimination claim (direct, circumstantial, or evidence of

pretext), . . . 'the ultimate question in every employment discrimination case involving a claim of

disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" Hill,

354 F.3d at 286 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. (2000)).

### I.    Prima Facie Case

To establish a prima facie case of discrimination in the context of a claim of failure to

promote, plaintiffs are required to show: (1) that they are a member of a protected class; (2) that

their employer had an open position for which they applied; (3) that they were qualified for the

position; and (4) that they were rejected for the position under circumstances giving rise to an

inference of unlawful discrimination. Taylor v. Virginia Union Univ., 193 F.3d 219, 230 (4th

Cir. 1999). In this case, the parties do not contest the first, second, or fourth factors in the

analysis. Instead, the parties' dispute centers on the third factor – whether the plaintiffs were

qualified for the position of product quality auditor. Having reviewed the record, the court

concludes that the plaintiffs have failed to raise a genuine issue of material fact with respect to

the third factor and, thus, that they are unable to make out a prima facie case of discrimination.

See Id. at 231 (holding that the plaintiff failed to establish a prima facie case since she did not

meet the requirements for the promotion at issue).

As previously summarized, the plaintiffs initially applied for two vacant product quality

auditor positions in August of 2006. At that time, the position required "five years experience in

design or assembly working with [Volvo's] product." (Attach. 2 to Decl. of David Lilly). To

have the requisite design experience, an applicant would have previously worked as a designer in Volvo's design unit or had outside experience designing trucks. To have the requisite assembly experience, an applicant would have previously worked on the production line at an automobile or truck manufacturing facility.

It is clear from the record that none of the plaintiffs were qualified for the posted auditor position, because they each lacked five years of experience in design or assembly as required by the written job description. Both Keener and Muller readily admitted during their depositions that they did not have five years of experience designing or assembling trucks. While Deal admitted to having no design experience, she contended that she met the assembly requirement, based on her experience in "putting the ship packets together" for each truck. (Deal Dep. at 157). It is readily apparent from the record, however, that the assembly requirement referred to prior experience assembling trucks or automobiles (i.e. working on the actual production line at a manufacturing facility), not to prior experience assembling truck-related paperwork.

The court also concludes that the plaintiffs have failed to establish that they satisfied all of the qualifications of the second and third postings for the vacant auditor positions.[2] Although the second and third postings removed the arduous "design or assembly" requirement, they nonetheless required "detailed comprehensive technical product knowledge," since the auditors "must have detailed knowledge of the structure and functionality of each component contained in the trucks to identify defects." (Lilly Decl. at para. 17). Here, the record reveals that each of the plaintiffs worked in administrative support positions prior to applying for the promotion at issue. Although the plaintiffs' positions may have required them to be familiar with Volvo's products,

---

[2] Only plaintiff Deal applied for the third posting.

10

the plaintiffs have failed to proffer sufficient evidence from which a reasonable jury could find that their work experience qualified them for the particular position of product quality auditor. While some of the plaintiffs' job responsibilities included matching manuals to Volvo trucks, examining trucks for decals, ordering parts, and processing design changes on a computer, the plaintiffs have failed to produce any evidence indicating that such duties provided the knowledge and experience required to perform head-to-toe audits of the company's trucks or to identify mechanical defects.[3]

The plaintiffs alternatively argue that they have outside experience which would have qualified them for the product quality auditor position. For instance, Katherine Deal testified at her deposition that her former husband was a mechanic and that she used to assist him on weekends. Similarly, Debra Keener testified that she has performed automotive work on her personal vehicle. It is undisputed, however, that none of the plaintiffs listed such prior experience on their resumes or shared such experience during their respective interviews for the position. See, e.g., Bailey v. Anne Arundel County, 259 F. Supp. 2d 421, 427 (D. Md. 2003) (considering the particular selection process used by the police department in determining whether the plaintiff was qualified for the promotion at the time the decision was made); Wallace v. Bd. of Educ., 2009 U.S. Dist. LEXIS 9186, at *13 (D. Md. Feb. 2, 2009) (holding that the plaintiff failed to establish that he was qualified for the position at issue, and emphasizing that it was undisputed that the resume the plaintiff submitted did not reference any supervisory experience).

---

[3] In this regard, the court notes that the plaintiffs' union representative acknowledged during his deposition that none of the plaintiffs satisfied all of the written job requirements.

In sum, the court concludes that the plaintiffs have failed to establish that they were qualified for the position of product quality auditor and, thus, their prima facie case of gender discrimination fails on this ground. Although the plaintiffs may have believed that they were qualified for the position or that some of the written job requirements were unnecessary, it is only the perception of the decision-maker that is relevant, not the self-assessment of the plaintiffs. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 269 (4th Cir. 2005) ("Miss Anderson cannot establish her own criteria for judging her qualifications for the promotion. She must compete for the promotion based on the qualifications established by her employer.").

## II.     Pretext

Even if the plaintiffs could establish a prima facie case of discrimination, Volvo has articulated a legitimate, nondiscriminatory reason for not selecting the plaintiffs for the vacant product quality auditor positions, namely that the plaintiffs lacked all of the requisite qualifications. Because Volvo has clearly met its burden of proffering a permissible reason for not promoting the plaintiffs to the position, the plaintiffs are required to show that the asserted reason is pretext for discrimination. Hill, 354 F.3d at 285. While the plaintiffs advance several arguments in an attempt to establish pretext, the court concludes, for the following reasons, that the plaintiffs have not carried their burden.

### A.     Revision of the Job Description

The plaintiffs first argue that the fact that Volvo changed the job description after the first posting constitutes circumstantial evidence of pretext. In particular, the plaintiffs contend that the revised criteria made it more difficult for female applicants to qualify for the product quality auditor position. As Volvo notes in its reply brief, however, the plaintiffs offer no evidence that

would permit a reasonable jury to conclude that the revised job requirements were pretext for discrimination. Instead, the evidence establishes that the requirements for the product quality auditor position were changed at the behest of the union. While the union was ultimately unsatisfied with the revised requirements, there is no reason to doubt the defendant's assertion that the modifications were intended to open the door to applicants who had the technical knowledge to perform the job but lacked the previously required "design or assembly" experience.

### B.  Fact-Finding Interviews

The plaintiffs also argue that Volvo's decision to institute fact-finding interviews provides evidence of pretext. While the plaintiffs suggest that Volvo somehow used the interviews to screen out female applicants, there is no evidence to support this assertion. Instead, the record reveals that the company not only interviewed candidates for the product quality auditor position in the past, but that it did so even when no female candidates applied for the position. Daniel Grubb, the manager of product quality auditors and the individual who requested the interviews, testified that he had conducted similar interviews for open positions throughout his career, and that Volvo had held fact-finding interviews for auditor positions in 2003, when four men and no women applied for vacancies.

### C.  Alleged Practice of Disregarding Job Requirements

The plaintiffs next contend that Volvo "deviated from its ongoing practice of basically disregarding the established [job] requirements" when it made the 2006 selection decisions. (Keener/Muller Br. at 37; Deal Br. at 11). This argument is based on the fact that Bruce Jennings, Volvo's former labor relations representative, admittedly selected candidates who did

not satisfy all of the job requirements when he filled vacant product quality auditor positions in 2003 and 2005. However, as Volvo explains in its reply brief, the circumstances that the company faced in the previous years were entirely different than those in 2006. In particular, Volvo had no qualified candidates for the vacant positions in 2003 or 2005, whereas in 2006 – the year that the plaintiffs applied – the company had an adequate pool of qualified candidates from which to fill the vacant auditor positions. Moreover, in 2003, when four unqualified applicants from the salaried bargaining unit were selected, the bargaining unit was scheduled to be reduced by four positions. Consequently, by filling the open positions with the four unqualified applicants, Volvo created a four-position vacancy in the salaried bargaining unit that permitted the company to avoid the need for involuntary layoffs.

Based on the foregoing, the court agrees with Volvo that the fact that the company previously selected unqualified candidates for vacant positions in 2003 and 2005, when it had no candidates who met all of the written job requirements, is not evidence of pretext. As Volvo emphasizes, the circumstances were different, the decision-makers were different, and the prior selections involved applicants with qualifications that varied from those of the plaintiffs.[4] See Odom v. Int'l Paper Co., 652 F. Supp. 2d 671 (E.D. Va. 2009) ("While one method of proving disparate treatment is by showing dissimilar treatment, the persons being compared must be 'similar in all relevant respects.'") (quoting Heyward v. Monroe, 1998 U.S. App. LEXIS 30855, at *6 (4th Cir. Dec. 7, 1998)); see also Forrest v. Transit Mgmt. of Charlotte, Inc., 245 F. App'x.

---

[4] For instance, while all four candidates selected for vacant positions in 2003 lacked five years of experience in design or assembly, Volvo learned during the fact-finding interviews that each of the candidates had production line experience or relevant mechanical experience.

255, 257 (4th Cir. 2007) ("If different decision-makers are involved, employees are generally not similarly situated.").

To hold otherwise would be to require Volvo to select unqualified candidates for future vacancies simply because the company did so in the past – a result that is not mandated by the governing statute. While Title VII unequivocally prohibits the denial of a promotion on the basis of gender, "it does not demand that an employee be placed in a position for which [she] is not qualified." Young v. Edgcomb Steel Co., 499 F.2d 97, 98 (4th Cir. 1974) (racial discrimination case).

### D.    Varying Reasons for Plaintiffs' Non-Selection

As further evidence of pretext, the plaintiffs argue that Volvo offered "changing and/or inconsistent explanations" for not selecting the plaintiffs for the product quality auditor vacancies. (Keener/Muller Br. at 39). To support this argument, the plaintiffs rely on a position statement that was sent to the EEOC by one of Volvo's in-house lawyers.[5] The statement indicates that the plaintiffs were not selected for the positions because they did not meet the requisite job requirements and because they chose not to participate in the requested fact-finding interviews. Because the latter reason was not accurate, the plaintiffs argue that the misstatement provides evidence of pretext. For the following reasons, however, the court disagrees.

While it is undisputed that the plaintiffs participated in the interview process and, thus, that the position statement contained inaccurate information, this case is inapposite from those in which changing or inconsistent explanations have been found to be probative of pretext. For

---

[5] An accompanying letter indicates that the position statement was prepared on behalf of another attorney who had been handling the case but was out on medical leave.

instance, in <u>EEOC v. Sears Roebuck & Co.</u>, 243 F.3d 846 (4th Cir. 2001), Sears repeatedly

offered different justifications for failing to hire the plaintiff. <u>Sears</u>, 243 F.3d at 849-850.

Similarly, in <u>Alvarado v. Board of Trustees</u>, 928 F.2d 118 (4th Cir. 1991), the plaintiff "was told

he was terminated because there was a lack of work at the college." <u>Alvarado</u>, 928 F.2d at 123.

However, the college later claimed that Alvarado was fired for "unsatisfactory job performance."

<u>Id.</u> at 123. As the United States Court of Appeals for the Fourth Circuit later noted in <u>Holland</u>,

<u>supra</u>, "<u>Sears</u> and <u>Alvarado</u> stand for the position that when a company changes its story after it

cannot support its initial story, there is an obvious issue of pretext." <u>Holland</u>, 487 at 216 n.7.

Here, on the other hand, neither Volvo nor David Lilly, who made the challenged

decisions, ever changed the initial explanation as to why the plaintiffs were not selected for the

vacant product quality auditor positions. According to the record, Lilly has consistently stated

that the plaintiffs were not promoted to the position because they lacked all of the necessary

qualifications. The EEOC position statement was not written by Lilly or any other fact witness to

the selection process, and the court is convinced that the single, isolated error contained in the

statement is not probative of pretext. See <u>Newsom v. Barnhart</u>, 116 F. App'x 429, 433 (4th Cir.

2004) (noting that even if there was an inconsistency, "there would be no reason to believe that

such inconsistency reflects discriminatory intent").

### E. <u>Evaluating Candidates Differently</u>

The plaintiffs next assert that Volvo evaluated the male and female candidates differently.

Specifically, the plaintiffs contend that Volvo "credited males with certain experience, while not

crediting females with similar experience," and that Volvo did not ask all of the candidates the

same questions during the interview. (Keener/Muller Br. at 40-41).

16

The plaintiffs' first assertion is based on the fact that Richard Arnold was selected for one of the vacant product quality auditor positions based primarily on his experience outside the Volvo plant. While plaintiffs Deal and Keener now emphasize that they also have outside experience working on automobiles, it is undisputed that they never informed Volvo of their mechanical experience, either on their applications or during the fact-finding interviews. Keener was specifically asked, during her deposition, why she did not inform the company of her prior experience working on automobiles. In response, Keener testified that she did not think it was relevant, and that she "felt like [she] met the minimum education and experience" requirements. (Keener Tr. at 183-184).

The plaintiffs also assert that the female candidates were asked different questions during their interviews. However, the plaintiffs have proffered no probative evidence to support this assertion. While Charles Vance, a former UAW representative, testified that one of the male candidates who applied for a vacant position in 2003 was asked different questions than another male candidate, Vance's testimony was limited to the 2003 interviews, and did not address the 2006 interviews that are relevant to this case.

### F.    Allegations Regarding Selectees

The plaintiffs also argue that Volvo intentionally fabricated the qualifications of selectee Richard Arnold and disregarded the collective bargaining agreement in selecting Barry Dixson. Both arguments, however, are unsupported by the record.

As for Arnold, the plaintiffs suggest that Volvo manufactured his qualifications in an attempt to justify his selection for one of the vacant product quality auditor positions. As Volvo points out, however, the plaintiffs' argument is based solely on a typographical error contained in

an internal document generated during the selection process. When Arnold applied for the product quality auditor position, his application indicated that he had previously worked as a "service advisor" at Duncan Ford. (Attach. 11 to Decl. of David Lilly). Arnold then elaborated on his responsibilities as a service advisor during his interview. Following the interview, Grubb emailed Lilly, who was out of his office during the interview, to share the results of his meeting with Arnold. In a follow-up email, Grubb incorrectly stated that Arnold had been a "service manager" at Duncan Ford, rather than a service advisor. Grubb testified at his deposition that this was likely a typographical error on his part.

Regardless of the wording of the email, however, Lilly contacted Duncan Ford to discuss Arnold's work experience prior to selecting Arnold. According to Lilly's deposition testimony, it was quickly apparent that Arnold had been a service advisor rather than a service manager. During his conversation with Duncan Ford, Lilly inquired and learned about the qualifications and duties of service advisors. He was told that "a service advisor generally comes from the mechanic rank," that "they're basically the first point of contact with the customer," that "they have to . . . make a quick diagnosis based on what the customer tells them," that "they coordinate getting that done with the mechanics," and that "they had to have a lot of automotive knowledge." (Lilly Dep. Tr. at 92-93). Based on the foregoing, the court concludes that there is no evidence to suggest that Volvo employees conspired to fabricate Arnold's qualifications.

In challenging the selection of Barry Dixson, the plaintiffs assert that his selection violated Volvo's collective bargaining agreement with the union. Specifically, the plaintiffs contend that Dixson should have been disqualified under the collective bargaining agreement,

18

since he had been documented for performance issues. The plaintiffs' argument, however, is without merit.

As Volvo explains in its reply brief, the collective bargaining agreement only governs the selection of candidates from the salaried bargaining unit. The agreement is not controlling when Volvo hires individuals from outside the salaried bargaining unit, as it did in 2006 with the selection of Dixson. The agreement provides that whenever a position within the salaried bargaining unit becomes available, employees from that unit are given priority in filling the position. In determining whether a salaried bargaining unit candidate is "qualified" for a vacant position, the agreement requires, among other things, that the individual have "good performance." If an employee from the salaried bargaining unit does not have "good performance," the labor contract provides that the employee is disqualified from transferring to the vacant position. If there are no qualified candidates from within the salaried bargaining unit, Volvo is permitted to hire a candidate from outside the bargaining unit, without regard to the applicant's prior performance. Volvo is also permitted to hire a candidate from outside the company.[6]

---

[6] As Volvo notes in its reply brief, the union does not dispute this interpretation of the collective bargaining agreement. During his deposition, Nicky Twine, acknowledged as follows:

Q.    . . . [I]f there's no qualified applicants in the Bargaining Unit, the company can hire outside the Bargaining Unit; isn't that correct?
A.    Yes.
Q     And so the Collective Bargaining Agreement – isn't it true that the Collective Bargaining Agreement does not control selections outside the Bargaining Unit?
A.    Yes.
Q.    Okay. In other words, when it says that someone has to have good performance to be selected for a promotion or to . . . have their bid accepted, isn't it true that that only relates to applicants within the Bargaining Unit?
A.    Yes.
Q.    . . . Let's assume that there are no qualified applicants within the Bargaining Unit. Volvo has the right at that point to hire anybody outside the Bargaining Unit, including individuals who have been fired or disciplined in other jobs.
A.    Assuming.

In this case, Volvo selected Dixson, an employee from outside the salaried bargaining unit, after determining that there were no qualified candidates from within the salaried bargaining unit. Because Dixson was not a salaried bargaining unit employee, he was not subject to the collective bargaining agreement's "good performance" requirement. In any event, the record indicates that Lilly discussed Dixson's performance history with Dixson's supervisor prior to making the selection, and that the supervisor advised Lilly that Dixson's performance had improved and was satisfactory at that time. For these reasons, the court concludes that no reasonable jury could find that the selection of Dixson was a violation of the collective bargaining agreement or evidence of gender discrimination. As Volvo emphasizes, Dixson had eight years of industrial engineering experience at Volvo, ten years of industrial engineering experience outside Volvo, and five years of production experience.

### G.    Grubb's Allegedly Discriminatory Animus

While there is no evidence that David Lilly harbored a discriminatory animus toward women,[7] the plaintiffs contend that there is sufficient evidence from which a reasonable jury could find that Daniel Grubb had a "discriminatory attitude" that should be imputed to Lilly. (Keener/Muller Br. at 43).  To support this argument, the plaintiffs cite to the deposition

---

Q.    Assuming . . . what, that there are no qualified applicants in the Bargaining Unit?
A.    That there are no qualified applicants.

(Twine 2d Dep. at 145-147).


[7] The court notes that Deal and Muller specifically acknowledged during their depositions that they were unaware of any occasions in which Lilly had made discriminatory remarks about women. Moreover, the record reveals that since the product quality auditor positions were filled in 2006, Lilly has promoted plaintiffs Deal and Muller to higher-paying positions at the New River Valley plant.

testimony of their union representative, Nicky Twine. During his deposition, Twine testified as

follows:

> Q. [B]ased on your observations, why in your opinion did the company
> want to change the description to keep women out?

> A. I believe - and all I can tell you is what I think. I can't say what I
> know. But I think that at the time Dan Grubb did not want those
> women in the job.

> Q. And what do you base your statement that, "Dan Grubb didn't want
> those women in the job?"

> A. Because . . . when it came through that we had an issue with the job,
> the candidates, that's when he wanted to [do] the fact-finding. And to
> me you base it on the language in the contract. You shouldn't have to
> do fact-finding. Had we based it on the language, the guys that were in
> the job [already] shouldn't have been there. And some of the guys that
> bid on the job with the women wouldn't have gotten it. For instance,
> Dickie Arnold, he would have never got that job.

> Q. So it is your opinion today that the initiation in 2006 of the fact-finding
> process was an effort to deny the women an equal opportunity to the
> position as a Quality Auditor?

> A. Could you ask that again, please?

> Q. Is it your position today that the conduct of the fact-finding interviews
> was part of the effort by Volvo to deny the women the same
> opportunity as the men with regard to the Quality Auditor position?

> A. I think it was – that was done to basically see or to show people who
> didn't have the qualifications. And at that time the women had the
> most seniority. So in an effort to point out the fact that they didn't
> meet the requirements, you have a fact-finding meeting. And that's
> what they did.

(Twine Dep. Tr. at 133-134).

It is evident from the foregoing testimony referenced by the plaintiffs that Twine was

offering only his opinion as to Grubb's intent. What the plaintiffs' union representative "thinks"

or "believes," however, is not enough to create a genuine issue of material fact. See Ash, 800

F.2d at 412 (unsupported speculation is insufficient to defeat a summary judgment motion).

Moreover, Twine's opinion is unsupported by any probative evidence. While Twine indicated that his opinion was based on the fact that Grubb had requested fact-finding interviews, the record establishes that the same type of interviews had been held when only men applied for the position.

In any event, even if the court assumes that Grubb harbored a discriminatory animus, the unrefuted evidence establishes that David Lilly, alone, made the decision not to select the plaintiffs for the vacant auditor positions. In the Fourth Circuit, "an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision." Hill, 354 F.3d at 291; see also Martin v. Mecklenburg County, 151 F. App'x 275, 280 (4th Cir. 2005) ("An employer will not be liable under Title VII for the decisions of just any employee with supervisory or managerial powers. Rather, Title VII only imposes liability if the retaliatory animus of the actual decisionmaker – i.e., 'the person who in reality makes the decision' – motivated the contested employment action.") (quoting Hill, supra).

**H.      The EEOC's "Reasonable Cause" Findings**

As a final argument, the plaintiffs contend that a reasonable jury could infer that unlawful discrimination occurred as a result of the EEOC's "reasonable cause" findings. Having reviewed the determination letters, however, and the applicable case law, the court concludes that the letters are not sufficiently probative to create a genuine issue of material fact. See, e.g., Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988) (holding, in a case under the Age Discrimination in Employment Act, that the EEOC's probable cause findings were "not enough to salvage [the plaintiff's] claim," where the Commission's report merely repeated facts alleged by the plaintiff and stated in a conclusory fashion that such facts reflected age discrimination);

see also Mondero v. Salt River Project, 400 F.3d 1207, 1215 (9th Cir. 2005) (emphasizing that an EEOC determination letter is not "somehow a free pass through summary judgment").

## Conclusion

For the reasons stated, the court will grant the motion for summary judgment filed by Volvo. While it is undisputed that the plaintiffs have performed satisfactorily in all of their administrative positions with the company, the plaintiffs have failed to establish that they were qualified for the particular position of product quality auditor. Likewise, the plaintiffs have failed to forecast sufficient evidence to show that Volvo's articulated reason for not promoting them to the position was pretext for gender discrimination.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 30ᵗʰ day of August, 2010.

_____

Chief United States District Judge